## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

In re the Application of:                          :
                                                   :
**DIANA TERREROS CASTILLO**,                       :
                                                   :
                            Petitioner,            :
                                                   :
            v.                                     :            C.A. No. 08-CV-471 (SLR)
                                                   :
**FABER CASTILLO**,                                :
                                                   :
                            Respondent.            :
                                                   :

**RESPONSE TO MOTION FOR INTERVIEW OF CHILD IN CHAMBERS, APPOINTMENT OF GUARDIAN *AD LITEM*, AND APPOINTMENT OF INDEPENDENT PSYCHOLOGIST**

Petitioner, Diana Terreros Castillo ("Diana" or "Petitioner"), through her undersigned counsel, in response to Respondent Faber Castillo's ("Faber" or "Respondent") Motion For Interview Of Child In Chambers. Appointment Of Guardian *Ad Litem*, And Appointment Of Independent Psychologist, states as follows:

## INTRODUCTION

The Hague Convention is designed "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence". *Hanley v. Roy*, 485 F.3d 641, 644 (11th Cir. 2007) In examining a Hague Convention Petition for the Return of a Minor Child, "[t]he court has the authority to decide only the merits of the abduction claim, not the merits of the underlying custody dispute." *Arboleda v. Arenas*, 311 F. Supp.2d 336, 340 (E.D.N.Y 2004). "When a child has been wrongfully removed from his country of habitual residence, the Convention provides the non-abducting parent with a remedy of return, intended to restore the parties to the pre-

abduction status quo and deter parents from crossing borders in search of a more sympathetic forum for child custody proceedings." *Hanley*, 485 F.3d at 644. The Petitioner opposes Respondent's motion in part because the Motion, if granted, would seem to go beyond the limited purpose of the Hague Convention Petition and delve into the underlying custody issues that a Hague Convention petition necessarily may not encompass.

There are only four exceptions to the rule that a child should be promptly returned to the non-abducting parent: (1) "there is grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation"; (2) "return of the child would not be permitted by the fundamental principles . . . relating to the protection of human rights and fundamental freedoms"; (3) "judicial proceedings were not commenced within one year of the child's abduction and the child is well-settled in the new environment"; and (4) the petitioner "was not actually exercising custody rights at the time of the removal." *Blondin v. Dubois*, 189 F.3d 240, 245-246 (2nd Cir. 1999). There is also a fifth consideration, left to the discretion of the judicial or administrative authority, which allows for refusal to order the return of a child where "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." *deSilva v. Pitts*, 481 F.3d 1279, 1286 (10th Cir. 2007). These exceptions are to be narrowly construed. *Blondin*, 189 F.3d at 246.

Respondent has not pled that L.C.T. would be exposed to harm if returned nor does he dispute that prior to L.C.T.'s removal the Petitioner was exercising rights of custody under Colombian law. L.C.T.'s testimony could therefore only potentially be relevant to two issues – whether the child is well-settled and, if the child has attained sufficient age and maturity, whether the child objects to being returned. A satisfactory inquiry can be made into both of

these factors through an in chambers interview with the child tailored to these narrow defenses, without the need for the appointment of a guardian *ad litem* or court-appointed psychologist and the attendant risk that the proceedings devolve into custodial issues. Therefore, as set forth below, the Petitioner does not object to a limited *in camera* interview in which the attorneys for each side are present but do not participate, but the Petitioner does oppose the appointment of a guardian *ad litem* and an independent psychologist for the purposes of this proceeding.

## **BACKGROUND**

Diana Terreros Castillo and Faber Castillo, both Colombian citizens, were married in Colombia on May 29, 1997. Their only child, L.C.T., was born on October 26, 1997. When L.C.T. was three years old, Faber moved to Venezuela, and remained there for the next five years. Diana and Faber divorced in 2003, and the divorce decree issued by the Colombian courts provided that L.C.T.'s primary residence was to be with Diana. (Ex. A) After the Respondent moved to Venezuela, until she left to visit Respondent in the United States, L.C.T. resided with her mother in Bogota, where her mother's family lived and she attended private school. In June of 2007, Diana agreed to send L.C.T. to the United States for a period of approximately one month to visit Faber in Delaware. Diana understood that L.C.T. was to return to Colombia on July 29, 2007: her return ticket had been purchased and L.C.T. had been registered at her school in Bogota for the 2007-2008 school year. However, after L.C.T. arrived in Delaware, Faber informed Diana of his intention to keep L.C.T. in the United States, and Faber did not return L.C.T. on her July 29, 2007 flight as he had promised.

Unbeknownst to Diana, Faber had been planning for over a year to keep L.C.T. in the United States. In 2006, Faber and his new wife, Ilia Santiago, made an application for L.C.T. to get an immigrant visa, rather than a tourist visa, and Faber filled out all of the paperwork

himself.  He then sent the completed forms to Diana in Colombia for her signature, telling her that they were simply the forms necessary to have L.C.T. visit him in Delaware.  Having taken advantage of Diana's ignorance of U.S. immigration procedures, Faber now claims that Diana's signature on the visa form indicates that she consented to his retention of L.C.T.

Even though Faber was secretly preparing to retain L.C.T., in his e-mails to Diana, he told her that he planned to return L.C.T. at the beginning of the school year.  Initially, he proposed a return date of August 4, 2007, and asked if Diana could arrange for L.C.T. to begin the school year 15 days late.  (Ex. B)  Later, he promised a return date of July 29, and, because he knew that L.C.T. would miss a week of school before she returned, asked for her teacher to send the material that would be missed so he could complete it with L.C.T. before she returned. (Ex. C)  As became clear after L.C.T. arrived in Delaware, Faber never had any intention of returning L.C.T. to Colombia.  His requests for the appointment of a guardian *ad litem* and an independent psychologist are merely a continuation of his efforts to abuse the system to gain possession of L.C.T.

## ARGUMENT

Absent allegations of harm, the testimony of a minor child can only be relevant to one of the statutory exceptions and one discretionary consideration.  The only statutory exception to which L.C.T.'s testimony could be relevant in this case is if "judicial proceedings were not commenced within one year of the child's abduction and the child is well-settled in the new environment."  *Blondin,* 189 F.3d at 245.  There is also a non-statutory consideration, left to the discretion of the judicial or administrative authority, which allows for refusal to order the return of a child where "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views."  *deSilva*, 481 F.3d at 1286.  "As

the federal statute implementing the Convention makes clear, these [] exceptions are meant to be narrow. They do not authorize a court to exceed its Hague Convention function by making determinations, such as who is the better parent, that remain within the purview of the court with plenary jurisdiction over the question of custody." *Blondin*, 189 F.3d at 246, citing 42 U.S.C. § 11601(a)(4). Accordingly, there is no need to appoint a guardian *ad litem* or an independent psychologist as neither could assist the court in its limited inquiry into whether the Petitioner has pled the required elements and whether the Respondent has raised any defenses recognized in a Hague Convention proceeding. The defenses raised do require an interview of L.C.T., however, that interview should be limited to issues relating to claims or defenses arising under the Hague Convention, and not a fishing expedition into the underlying custody dispute.

I.     **L.C.T., A Ten-Year-Old, Does Not Have Sufficient Age And Maturity For Her Wishes To Be Taken Into Account As A Matter Of Law**

Respondent argues that L.C.T. has attained sufficient age and maturity such that the court should take her views into account in determining whether she should be returned to her mother. However, "the exception based on the wishes of the minor child is narrowly construed, and is not automatically applied. *Mendez Lynch v. Mendez Lynch*, 220 F. Supp.2d 1347, 1364 (M.D. Fla. 2002). Even if the court does decide to take the child's views into account, the child's views are not outcome-determinative. The "court is *not* bound to order the return of a child if respondent demonstrates by a preponderance of the evidence that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." *Id.* at 1361 (emphasis added). Because the Hague Convention only provides for the return of a minor child under the age of sixteen, the "age and maturity" consideration is really aimed at taking into account the wishes of those children approaching that age. *In re Robinson*, 983 F. Supp. 1339, 1343 (D. Colo. 1997) ("Reliance upon the objection makes some sense if the child is

approaching 16 years of age - when the Convention is no longer applicable."). In this case, L.C.T. is only ten years old – a far cry from sixteen – and is simply too young for this consideration to apply.

Courts have often refused to take the wishes of a ten-year-old child into account because, at that age, a child lacks sufficient age and maturity, and is susceptible to the influence of the abducting parent. For example, in *Mendez Lynch*, despite the court's finding that the minor child was sufficiently mature to take his preference to stay in the United States into account, the court nonetheless granted the petition for return, in part because the child's views had been influenced by the respondent, who consistently articulated a desire to remain in the United States. Because L.C.T. has been with her father in Delaware for a year, it is likely that he has influenced her wishes by expressing his desire that L.C.T. remain in the United States, and by telling L.C.T. that her educational opportunities are greater if she remains with him in Delaware. Because L.C.T. is only ten years old, and was nine when she arrived in Delaware, her father's influence, even if unintentional, would have a great impact on an impressionable young mind.

Even disregarding any influence that may have impacted L.C.T.'s wishes, she is simply too young to be able to determine what is in her own best interest. *See, e.g., Mendoza v. Mendoza*, 525 F. Supp.2d 1182, 1199 (C.D. Cal. 2007) (ten-year old had not "reached a degree of maturity to allow her to express her individual views free from outside influence."); *Angulo Garcia v. Fernandez Angarita*, 440 F. Supp.2d 1364, 1381 (S.D. Fla. 2006) (although the minor child was "an impressive, well-mannered and articulate eleven-year old, ... he is not of sufficient age and maturity such that the court should refuse to order his return based on his objection."); *Robinson*, 983 F. Supp. at 1343 ("a 10-year old with maturity beyond his chronological age is still very much a child. Indeed, other courts have simply declared that the objection of one so

young should not be considered."); *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259. 279 (3rd Cir. 2007) (court refused to consider ten-year old's preference for staying with abducting parent, where her reasons for preferring to stay included "liking her school, her preference for living in a house rather than a small apartment, and having friends and brothers.") and *Wasniewski v. Grezelak-Johannsen*, 2007 U.S. Dist. LEXIS 59762 (N.D. Ohio Aug. 15, 2007) (finding that thirteen-year old boy had not attained sufficient age and maturity to take his wishes into consideration). In one case, although the court acknowledged the wishes of fourteen-year old twins, it found that their younger siblings, aged thirteen and eleven, did not have sufficient age and maturity for the court to take their wishes into consideration. *McManus v. McManus*, 354 F. Supp.2d 62 (D. Mass 2005). The court there noted that "commentary to the Convention suggests that children who are nearing 16 years should ordinarily have their own wishes respected." *Id.* at 71.

In this case, L.C.T, at ten years old, is simply too young to take her wishes into account, and the Colombian Courts have already determined that Petitioner is to have custody of L.C.T. This proceeding is not the appropriate venue for Respondent to challenge that determination, and the scope of the *in camera* interview should be appropriately limited.

## II.    Respondent's Requests For A Guardian Ad Litem And Independent Psychologist Are Unsupported And Unwarranted In A Narrow Jurisdictional Proceeding

Although Respondent implies that the appointment of a guardian *ad litem* is commonplace, his citations support only his proposition that an *in camera* interview of the minor child is consistent with the procedure taken by other courts. The minor children in *Matovski v. Matovski*, 2007 WL 200862 (S.D.N.Y. Aug. 31, 2007) and in *Koc v. Koc*, 181 F. Supp.2d 136 (E.D.N.Y. 2001) did not have guardians *ad litem* appointed, although the court interviewed the children in camera. In *Matovski*, even though allegations of physical abuse existed, the court did

not think it necessary to appoint a guardian *ad litem*. In this case, there are no allegations of abuse or that L.C.T. would be harmed by returning to her mother in Colombia. There is similarly no need to determine what is in L.C.T.'s best interest, and therefore no reason for the appointment of a guardian *ad litem*, because custody has already been granted to Petitioner by the Colombian courts in the divorce agreement and that determination cannot be rehashed in this proceeding.

Similarly, Respondent's reliance on *Matovski* to support his request for the appointment of an independent psychologist is unfounded. In that case, a psychologist was appointed because the children were subjected to physical and psychological abuse by their father, who was petitioning for their return. In Hague Convention petitions, courts have found the appointment of a psychologist unnecessary where the child is well-adjusted and there is no history or abuse or neglect while in the petitioner's care. *Gonzalez Locicero v. Nazor Lurashi*, 321 F. Supp.2d 295, 298 (D. P.R. 2004) ("In any event, the child seems well adjusted and has no history of abuse or neglect while in the care of his mother in Argentina, making the review of a psychologist unnecessary."). Because there are no allegations of abuse in this case, and Respondent himself argues that L.C.T. is well adjusted, there is no need for this court to appoint an independent psychologist.

## CONCLUSION

For the foregoing reasons, Respondent's motion for the appointment of a guardian *ad litem* and the appointment of an independent psychologist should be denied. Petitioner does not object to an *in camera* interview of L.C.T. so long as one attorney representing each party is allowed to be present, but not to participate, and so long as the interview is limited to an inquiry into claims and defenses arising under the Hague Convention.

DATED: August 25, 2008  **DUANE MORRIS LLP**

        /s/ Matt Neiderman
        Matt Neiderman (Del. I.D. No. 4018)
        Aimee Czachorowski (Del. I.D. No. 4670)
        1100 North Market Street, 12th Floor
        Wilmington, Delaware 19801
        302.657.4900

        *Attorneys for Petitoner Diana Terreros Castillo*

9

EXHIBITS FILED UNDER SEAL