IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DIANA TERREROS CASTILLO,    )
                            )
        Petitioner,     )
                            )
    v.                 )  Civ. No. 08-471-SLR
                            )
FABER CASTILLO,        )
                            )
        Respondent.   )

---

Matt Neiderman, Esquire, of Duane Morris LLP, Wilmington, Delaware.  Counsel for Petitioner.

Andrew W. Gonser, Esquire, of Gonser and Gonser, P.A., Wilmington, Delaware. Counsel for Respondent.

---

**MEMORANDUM OPINION**

Dated: February 12, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Petitioner Diana Terreros Castillo ("petitioner") filed this petition against respondent Faber Castillo ("respondent") on July 29, 2008, seeking the return of her minor child ("child") pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention").[1]  (D.I. 1)  Petitioner, a resident of Colombia, alleges that respondent has wrongfully retained child in Delaware in violation of petitioner's custody rights.  (*Id.*)

The court has jurisdiction over this matter pursuant to 42 U.S.C. § 11603. Having reviewed the record in this summary proceeding, *see Zajaczkowski v. Zajaczkowska*, 932 F. Supp. 128, 130 (D. Md. 1996), which includes testimony, documentary evidence, and a report from attorney Kathleen McDonough, the court concludes that respondent has shown cause why petitioner's petition should not be granted.  Accordingly, for the reasons set forth below, the court denies the petition.

## II. BACKGROUND

### A. Petitioner and Respondent's Relationship and Child's Life in Colombia

Petitioner and respondent (collectively, "the parties"), both originally from Colombia, are cousins who became romantically involved after Respondent moved back to Colombia from Venezuela.  (*See* D.I. 28 at 12:12-13:6)  At some point

---

[1]Congress implemented the Hague Convention on the Civil Aspects of International Child Abduction as the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 *et seq.  Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995).

thereafter, petitioner became pregnant with respondent's child.[2]  (*Id.* at 13:7-11)  A few months after respondent learned of petitioner's pregnancy, the parties were married in Colombia.  (*Id.* at 13:18-21)  On October 26, 1997, petitioner gave birth to child.  (D.I. 26, ex. 1)

At the time child was born, respondent resided in an apartment in Bogota, and petitioner and child resided with petitioner's parents outside of Bogota.  (D.I. 28 at 14:6-11)  Petitioner and child visited respondent in Bogota on weekends during child's first three years but continued to reside with petitioner's parents.  (*Id.* at 14:12-17)  When child was three years old, respondent moved to Venezuela.  (*Id.* at 18-20)  During the year that respondent was in Venezuela, petitioner and child visited him once; otherwise, respondent's contact with child was primarily by telephone.  (*Id.* at 14:21-23, 15:13-15, 15:24-16:4)  Respondent then moved to the United States, after which his contact with child consisted primarily of monthly telephone calls.  (*Id.* at 16:5-12)

The parties divorced in Colombia in 2002.[3]  (D.I. 26, ex. 2)  They agreed to share parental rights and custody with respect to child, with petitioner as primary caregiver.  (*Id.*; *see also* D.I. 28 at 22:4-20)  The parties also agreed that child could travel outside Colombia for parental visits as long as child was returned after an agreed period of time.  (D.I. 26, ex. 2)

After the divorce, child continued to live with petitioner and petitioner's parents in

---

[2]At the time of the pregnancy, petitioner was nineteen years old and respondent was twenty-two years old.  (D.I. 28 at 13:12-17)

[3]Respondent, then in the United States, acted through an attorney in Colombia. (D.I. 28 19:4-24)

Colombia near other family members.[4] (D.I. 28 at 84:13-24) Petitioner enrolled child in a well-regarded private school in Colombia. (*Id.* at 85:22-86:7)

## B. Parties' Plan for Child's Trip to the United States

In October 2005, respondent visited petitioner and child in Colombia. (*Id.* at 85:3-7) During that visit, the parties discussed the possibility of child coming to the United States. (*Id.* at 85:8-11) In January 2006, respondent's current wife, Ilia Santiago,[5] a United States citizen, applied for an immigrant visa for child. (D.I. 26, ex. 3) In May 2006, respondent received notice that the visa application for child had been approved. (*Id.*)

In or around February 2007, respondent contacted petitioner to make arrangements for child to come to the United States. (D.I. 28 at 86:20-24) On February 27, 2007, after the parties worked together to complete the visa prerequisites (*see, e.g., id.* at 99:1-101:8), child was issued an immigrant visa, which authorized immigration to the United States until August 26, 2007. (*Id.* at 69:2-21) Respondent's emails to petitioner, along with the parental travel permit signed by petitioner authorizing child to fly to the United States, suggest that child was to come to the United States to stay with respondent for approximately one month (from the end of June to the end of July 2007), after which time child would return to Colombia. (D.I. 26, ex. 4-6) Respondent ultimately booked for child a round trip airline ticket leaving from Bogota on June 28, 2007, and returning to Bogota on July 29, 2007. (*Id.* at ex. 5)

[4]Almost all of child's extended family resides in Bogota. (D.I. 28 at 84:23-24)
[5]Respondent and Santiago married on June 26, 2004. (D.I. 9 at ¶ 9.a(2)

3

### C. Child's Remaining in the United States and Petitioner's Objection

On or about June 28, 2007, child traveled to the United States. (*See id.*; D.I. 9 at

¶ 9.a)  After arriving in the United States, child received a "green card," authorizing child

to reside in the United States as a permanent resident until July 19, 2017. (*See* D.I. 25

at A-24, A-25)  On or about July 24, 2007, respondent informed petitioner that child

would be remaining with him in the United States, an arrangement to which petitioner

objected. (D.I. 28 at 75:12-14, 89:13-90:4)

In a letter dated March 7, 2008, petitioner requested the Colombian

government's help in securing child's return. (D.I. 26, ex. 10)  The request was

forwarded to the United States Department of State, which ultimately contacted counsel

to serve on petitioner's behalf in late July 2008. (*See id.* at ex. 11)  petitioner filed the

instant action on July 29, 2008. (D.I. 1)

### D. Child's Life in the United States and Desire to Remain

On October 20, 2008, by order of the court, child met with attorney Kathleen

McDonough.[6] (D.I. 25 at A-19)  The report from this meeting indicates the following

about child's life and desire to remain in the United States and whether child is

sufficiently mature for the court to take account of her desire in resolving the instant

dispute:

- Since the end of July 2007, child has lived with respondent and Santiago, whom child calls "Lily," in their home at 2623 McClary Drive in Wilmington. (D.I. 22 at 8; D.I. 28 at 77:20-22)  Neither respondent nor Santiago has other children,

---

[6]The purpose of this meeting was for McDonough to interview child to ascertain whether child is "'well settled' in her present environment[,] . . . objects to be returned to Colombia and, if so, . . . has attained an age and degree of maturity at which it is appropriate to take account of her views." (D.I. 20 at 2)

4

though Santiago has several family members living nearby with whom child, respondent, and Santiago regularly spend time. (*Id.*)  Child participates in family activities with respondent and Santiago, including fishing trips on the Chesapeake and rides on the Cape May-Lewes Ferry. (*Id.*)  Child reported not playing much with children in her neighborhood because few are close to her in age. (*Id.*)

- Child reported having many friends from Marbrook Elementary School, where she is enrolled. (*Id.*)  At school, child is placed in bilingual classes for some, but not all, subjects. (*Id.*)  Child expressed enthusiasm for school; she ranks in the 60th percentiles, approximately, for math and verbal skills and has received perfect or near perfect scores on several recent tests.[7] (*Id.* at 8-9)  Child has also developed fluency in English, a language she did not speak when she arrived in the United States in June 2007. (*Id.*)  After school and during the summer while respondent and Santiago are at work,[8] child either attends daycare at the Latin American Community Center or is cared for at home by Santiago's aunt. (*Id.* at 8)

- Child expressed a preference for her school and friends in the United States. (*Id.* at 9)  Child reported that she speaks to petitioner by telephone occasionally, but did not express any sense of missing her life in Colombia. (*Id.*)  When discussing her life in Colombia, child recounted concerns about safety in the neighborhood where she lived with Petitioner and Petitioner's parents, explaining that she usually did not play outside due to those safety concerns. (*Id.*)  Child also reported spending much of her time at Petitioner's home alone and that she had few friends due to her school's distance from her home and the difference between her schoolmates' socioeconomic background and her own. (*Id.*)  Child reported that she received little help with her homework when she lived with petitioner and that her grades in school were worse than those she receives now. (*Id.*)

- Child displayed "impressive" maturity for a girl about to turn eleven years old. (*Id.* at 10)  She was bright, enthusiastic, and polite, and appeared well cared for. (*Id.* at 8)  Child demonstrated clear understanding of the meeting's purpose and the need to answer questions truthfully. (*Id.* at 9)  She answered questions in a

---

[7]Child has also received awards for perfect attendance during the second and fourth marking periods of the 2007-2008 school  year. (D.I. 25 at A-26-A-27)  She reports that respondent actively assists her with homework and monitors her television viewing and computer usage. (D.I. 22 at 9)

[8]Respondent is employed full time for a graphic design company and has held a position with that company for the last three years. (D.I. 22 at 8; D.I. 28 at 77:15-16) Santiago is employed full time doing accounting for a local retail store. (D.I. 22 at 8)

straightforward manner and did not appear fearful or under duress. (*Id.*) Child expressed a strong and unequivocal desire to remain in the United States. (*Id.* at 10)

## III. DISCUSSION

### A. Legal Framework

The Convention has two main purposes: "to ensure the prompt return of children to the state of their habitual residence when they have been wrongfully removed" and "to ensure that rights of custody and access under the law of one Contracting State[, *i.e.*, signatory to the Convention,] are effectively respected in the other Contracting States." *Karkkainen v. Kovalchuk*, 445 F.3d 280, 287 (3d Cir. 2006). "A person claiming that a child has been wrongfully removed to or retained in the United States can commence judicial proceedings under the Convention by filing a petition for the return of the child in a state or federal court which has jurisdiction where the child is located." *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 270 (3d Cir. 2007) (citing 42 U.S.C. § 11603(b)). For the petition to be granted, the petitioner must establish by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the Convention[.]" 42 U.S.C. § 11603(e)(1)(A). Whether a child's removal or retention was wrongful within the meaning of the Convention involves two inquiries: (a) whether the removal or retention breached petitioner's custody rights under the law of the State in which the child was habitually resident[9] immediately before

---

[9]"Habitual resident" is not defined in the Convention or ICARA. *Feder*, 63 F.3d at 222. "The inquiry into a child's habitual residence is not formulaic; rather, it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004). In *Feder*, the court defined a child's habitual residence as "the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled

6

the removal or retention and (b) whether petitioner was exercising those custody rights at the time of the removal or retention, or would have been but for the removal or retention. *See* Hague Convention, art. 3; *see also Feder*, 63 F.3d at 222-225.

Even where a petitioner establishes that the child has been wrongfully removed or retained, the court may deny the petition if the respondent establishes, by a preponderance of the evidence, that an exception set forth in Article 12 or 13 (besides 13b) of the Convention applies. *See* 42 U.S.C. § 11603(e)(2). One such exception, found in Article 12, applies where one year or more has elapsed between the wrongful retention or removal and the date of the petition, *see* 42 U.S.C. § 11603(f), and "it is demonstrated that the child is now settled in its new environment." Hague Convention, art. 12. Another exception, found in Article 13, applies where "the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Hague Convention, art. 13. These have been referred to, respectively, as the "well-settled" and "wishes of the child" exceptions. *See, e.g., Tsai-Yi Yang*, 499 F.3d at 278. These exceptions, or affirmative defenses, "'are narrowly construed to effectuate the purposes of the Convention, and even where a defense applies, the court has the discretion to order the child's return.'" *Id.* at 270 (quoting *Karkkainen*, 445 F.3d at 288).

With respect to whether the "well-settled" exception applies, courts should focus

---

purpose' from the child's perspective." *Feder*, 63 F.3d at 224. The *Feder* court explained further that "whether any particular place satisfies this standard must focus on the child and consists of an analysis of the child's circumstances in that place and the parents' present, shared intentions regarding the child's presence there." *Id.* In the instant case, the court does not determine child's habitual residence because such determination is not necessary to resolve the petition.

on whether there is "substantial evidence of the child's significant connections to the new country." Public Notice 957, Hague Int'l Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494, 10509 (March 26, 1986) ("Public Notice 957"). Courts have interpreted that guidance as a call to "consider any relevant factor informative of the child's connection with his or her living environment." *Silvestri v. Oliva*, 403 F. Supp. 2d 378, 387 (D. N.J. 2005). These factors include: (1) the age of the child; (2) the stability of the child's new residence; (3) whether the child attends school or daycare consistently; (4) whether the child attends church regularly; (5) the stability of the [parent's] employment or other means of support; (6) whether the child has friends and relatives in the area; and (7) to what extent the child has maintained ties to the country of habitual residence. *Koc v. Koc (In re Koc)*, 181 F. Supp. 2d 136, 152 (E.D.N.Y. 2001); *Silvestri*, 403 F. Supp. 2d at 387-388; *see also Ahumada Cabrera v. Lozano (In re Ahumada Cabrera)*, 323 F. Supp. 2d 1303, 1314 (S.D. Fla. 2004). Courts have also considered the level of parental involvement in the child's life, active measures to conceal child's whereabouts (and the possibility of criminal prosecution related thereto), and the immigration status of the child and respondent. *See Lops v. Lops*, 140 F.3d 927, 946 (11th Cir. 1998); *Koc*, 181 F. Supp. 2d at 154; *In re Ahumada Cabrera*, 323 F. Supp. 2d at 1314. "A more 'comfortable material existence' does not mean that the child is well settled." *Koc*, 181 F. Supp. 2d at 152 (citing *Lops*, 140 F.3d at 946; *see also In re Ahumada Cabrera*, 323 F. Supp. 2d at 1314.

With respect to whether the "wishes of the child" exception applies, "[t]he Convention does not set an age at which a child is automatically considered to be

8

sufficiently mature, rather the determination is to be made on a case-by-case basis."[10] *Tsai-Yi Yang*, 445 F.3d at 279. It follows, then,"'[g]iven the fact-intensive and idiosyncratic nature of the inquiry, [that] decisions applying the ['wishes of the child'] exception are understandably disparate.'" *Id.* (quoting *de Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007). That disparity notwithstanding, courts consistently hold that the "wishes of the child" exception does not apply where the child's wishes appear to be the product of undue influence. *See, e.g., Tsai-Yi Yang*, 499 F.3d at 279; *Robinson*, 983 F. Supp. at 1344. Also, at least one court has suggested that "particularized objections" to being returned are better evidence of sufficient age and maturity than is "a more generalized desire to remain" in the United States. *See Tsai-Yi Yang*, 499 F.3d at 279.

## B. Application of the "Well-Settled" and "Wishes of the Child" Exceptions

The record is not clear regarding child's habitual residence – and hence whether she was wrongfully retained in the United States – largely because respondent and petitioner present conflicting evidence regarding their shared intent for child's habitual residence. The court need not resolve that issue, however, because, assuming without deciding that child was wrongfully retained, the court concludes that both the "well-

[10]One district court, noting that the Convention does not apply to children age sixteen or older, opined in dicta that applying the "wishes of the child" exception "makes some sense if the child is approaching 16 years of age." *In re Robinson*, 983 F. Supp. 1339, 1343 (D. Colo. 1997) (citing Public Notice 957, 51 Fed. Reg. at 10504). The *Robinson* court's reasoning seems to be that, if sixteen-year-old children are considered to be sufficiently mature so that the Convention does not even apply to them, then it is reasonable that children nearing the age of sixteen, whose maturity can be practically indistinguishable from that of sixteen year olds, would be excepted from the Convention's provisions and allowed to choose for themselves where they want to live. *See generally id.* at 1343 n.2. However cogent that reasoning, the great weight of case law and Public Notice 957 make clear that there is no age minimum for application of the "wishes of the child" exception, and the court here declines to adopt one.

settled" and "wishes of the child" exceptions apply; the application of these two exceptions persuades the court to deny the petition.

## 1. The "Well-Settled" Exception

For the "well-settled" exception to apply, respondent must establish by a preponderance of the evidence that, as a threshold matter, one year or more elapsed between the wrongful retention and the date of the petition. The wrongful retention in this case occurred on either July 24, 2007, when petitioner first learned of and objected to respondent's retaining child, or July 29, 2007, when child did not take the return flight to Bogota. See Karkkainen, 445 F.3d at 290-291 (where petitioner had clearly expressed objection to child remaining in the United States past the date of her return flight, the wrongful retention commenced on the date that child failed to make her return flight). Petitioner filed her petition on July 29, 2008, which the court finds is at least one year after the wrongful retention.[11] Accordingly, the court concludes that respondent has met his burden of proof with respect to whether the court may apply the "well-settled" exception.

To determine whether child is well settled, the court examines the factors outlined in the case law. Child arrived in the United States over nineteen months ago when she was nine years old, and she is now eleven years old. Her residence has been stable, having lived since her arrival in the same home in Wilmington with

---

[11]"The one-year limit can be equitably tolled if the respondent hides the child's location from the petitioner." Muhlenkamp v. Blizzard, 521 F. Supp. 2d 1140, 1151-1152 (E.D. Wash. 2007) (citing Furnes v. Reeves, 362 F.3d 702, 723 (11th Cir. 2004). On the record here, the court finds no basis for equitable tolling of the one-year limit, as respondent has not concealed child's location from petitioner.

10

respondent and Santiago.  Her school attendance in the United States has been

regular, with child having received two awards for perfect attendance during the 2007-

2008 academic year.  Moreover, child demonstrates improved grades and English

fluency and has many friends at school.

Respondent's employment is stable.  Respondent and Santiago have full-time

jobs, respondent having been with his employer for the last three years.  While that

necessitates that child attend daycare or be cared for by Santiago's aunt, respondent is

actively involved in Child's life, assisting with homework and monitoring her television

viewing and computer usage.  Respondent and Santiago also participate with child in

recreational activities, including fishing trips and ferry rides.  The court finds that child's

activities with respondent and Santiago, along with her friends at school and her

interactions with the members of Santiago's family living nearby, adequately

compensates for the lack of extended family in the area and age-compatible playmates

in her neighborhood.

Child's immigration status is stable.  She is a permanent resident with a "green

card" and a Social Security card.  (D.I. 26 at A-25; D.I. 28 at 70:11-19)  Moreover,

respondent testified at the August 28, 2008 hearing that he had applied for United

States citizenship and expected, as of the time he testified, to be sworn in as a citizen

in October 2008.  (D.I. 28 at 70:20-23)  He testified further to his understanding that,

once he became a citizen, child would also become eligible for citizenship.  (*Id.* at

70:24-71:1)  While the court finds that child's status as a permanent resident, standing

alone, qualifies as stable immigration status, the court considers respondent's

citizenship efforts, and his apparent intention to make those efforts on child's behalf, as

11

further evidence of child's stable immigration status.[12]

Finally, child has been able to maintain contact with petitioner. Respondent has done nothing to conceal child's whereabouts from petitioner and, since the time that child came to the United States, petitioner has known child's whereabouts and address and has been able to maintain phone contact. (D.I. 28 at 96:13-22) Considering these factors together, the court concludes that respondent has established, by a preponderance of the evidence, that child is well settled in her new environment.

The court acknowledges that some courts, on records that are in some ways similar to the record here, have concluded that children were not well settled. *See, e.g., Giampaolo v. Erneta*, 390 F. Supp. 2d 1269, 1282-83 (N.D. Ga 2004) (child who had been in the United States two-and-a-half years, regularly attended school and performed well, participated in extracurricular activities, become fluent in English, made friends, and enjoyed living with respondent, was not well settled because she had lived in at least three different residences and attended three different schools since arriving in the United States, was (along with respondent) in the United States illegally, had virtually no family in the United States, would not be taught regarding her Argentine heritage, and would be living with respondent's husband, who was a convicted felon); *In re Koc*, 181 F. Supp. 2d at 153-54 (child who had been in the United States two-and-a-half years, done well academically, spoke excellent English, had a best friend at school, and had several extended family members in the United States, was not well settled

---

[12]Respondent represents in his closing brief that he was sworn in as a United States citizen on December 4, 2008, and is processing the paperwork for child to become a citizen. (D.I. 24 at 11)

because she had lived in three different locations and attended three different schools since arriving in the United States, did not participate in extracurricular activities, did not attend church regularly, did not socialize with her classmates outside of school or have friends in the neighborhood, was subject to respondent's unstable employment and dependence on public and family assistance, and was (along with respondent) in the United States illegally, which effectively left her unable to see her father); *In re Ahumada Cabrera*, 323 F. Supp. 2d at 1313-15 (child who had lived in the United States two-and-a-half years, attended school regularly and maintained good grades, was fluent in English, had some friends, played soccer, and appeared to be happy and doing well, was not well settled because she had changed schools once and residences fives times since arriving in the United States, could herself be deported and was subject to mother's uncertain immigration status and long-term employment prospects, and had only her mother and one aunt in the United States). The court notes, however, that these cases are readily and saliently distinguishable from the instant case, where child has had one residence and one school since arriving in the United States, is legally here as a permanent resident, and benefits from respondent's stable employment and immigration status. The court further notes that other courts, on similar (or arguably thinner) records, have concluded that children *were* well settled. *See, e.g, Wojcik v. Wojcik*, 959 F. Supp. 413, 421 (E.D. Mich. 1997) (children well settled because they had been in the United States for eighteen months, had lived in only two residences (eight months with mother's brother and the remaining time in their own rented home), had attended school or daycare consistently, had friends in the area, attended church regularly, and mother had been employed by the same employer

13

for more than a year); *In re Robinson*, 983 F. Supp. at 1345-46 (children well settled because they had lived in the same area for twenty-two months (five months with their grandfather and the rest in a home in a nearby town), were old enough to form meaningful connections to the new environment, had been actively involved with respondent's extended family, had been doing well in school, were active participants in extracurricular activities, and had made friends in school and elsewhere); *Zuker v. Andrews*, 2 F. Supp. 2d 134, 141 (D. Mass. 1998) (four-year-old child well settled because he had attended the same daycare full time for more than a year, had thrived academically and socially, had play-dates at his home and at his friends' homes, and had established relationships with his teachers and grandmother (whom he saw two or three times a week)); *Silvestri v. Oliva*, 403 F. Supp. 2d at 388 (children well settled because they were lawfully in the United States, had moved only once and had remained in the same school system over two-and-a-half years, and had received many visits from petitioner since arriving in the United States). Finding no compelling contrary authority, the court concludes, on the record in this case, that the "well-settled" exception applies.

## 2. The "Wishes of the Child" Exception

Child has expressed a "strong and unequivocal" desire to remain in the United States, and the court finds that child is old enough and mature enough for the court to take account of her views. Child is a bright eleven-year-old who, in her meeting with McDonough, displayed "impressive" maturity for a girl that age. She also demonstrated clear understanding of the meeting's purpose and the need to be truthful in answering

14

questions. Child answered questions in a straightforward manner, and the record
contains no evidence that her answers were merely expressions of someone else's
opinion or otherwise the product of undue influence; McDonough reported that child
appeared neither fearful nor under duress. Furthermore, child expressed particularized
objections to returning to Colombia, pointing out that, in Colombia, she received little
help with homework, performed poorly in school (at least relative to her performance in
the United States), was often unable to play outside due to safety concerns, spent
much of her time at home alone, and had few friends. These particularized objections
evidence to the court that child's desire to remain in the United States is born of rational
comparison between her life here and her life in Colombia. The court considers a
desire based on such rational comparison to be a mature desire worth taking into
account.

As with the "well-settled" exception, courts have, on records that are in some
ways similar to the record here, found the "wishes of the child" exception inapplicable.
See, e.g., Tsai-Yi Yang, 499 F.3d at 279 (borderline genius ten-year-old girl found not
sufficiently mature where her desire for staying in United States was based on liking her
school, preferring a house to an apartment, and having friends and brothers, and there
was evidence of undue influence); Mendoza v. Mendoza, 525 F. Supp. 2d 1182, 1199
(C.D. Cal. 2007) (ten-year-old girl found not sufficiently mature where she could not
express "individual views free from outside influence"). The record here is
distinguishable, however, in that it contains no evidence of undue influence and, in
particular contrast to the record in Tsai-Yi Yang, contains evidence of particularized
objections to being returned. Accordingly, the court concludes that the "wishes of the

15

child" exception applies.

## C. Exercising the Court's Discretion

Respondent having shown that the "well-settled" and "wishes of the child" exceptions" apply, "it is within the discretion" of the court to deny the petition. *See Tsai-Yi Yang*, 499 F.3d at 278. In considering how to exercise its discretion here, the court recognizes that the Convention aims to return wrongfully removed  children. *See id.* The court also recognizes, however, that, in providing the "well-settled" exception, "the Convention's framers recognized that . . . there could come a point at which a child would become so settled in a new environment that repatriation might not be in its best interest." *Blondin v. Dubois*, 238 F.3d 153, 164 (2d Cir. 2001); *see also In re Robinson*, 983 F. Supp. at 1346 (determination that child is well settled is not a determination that child has a better life in the United States but rather a determination that, with child now settled in the new environment, to again uproot child would be harmful in contravention of the Convention). Put another way, the "well-settled" exception "is a recognition that, after the passage of a sufficient period of time, the child's interests in remaining in an established environment may be superior to the interest of the petitioning parent." *Matovski v. Matovski*, 2007 WL 2600862 (citing Elisa Perez-Vera, *Explanatory Report: Hague Conference on Private International Law*, in 3 Acts and Documents of the Fourteenth Session 430 (1980), ¶ 107)[13]. Furthermore, the

_____

[13]Perez-Vera served as "the official Hague Conference reporter for the Convention" and "her explanatory report is recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention." Public Notice 957, 51 Fed. Reg. at 10503; *Blondin v. Dubois*, 189 F.3d 240, 246 n.5 (2d Cir. 1999).

16

Convention's aim notwithstanding, "[t]he child's wishes can be the sole reason that a court refuses to order the return of the child to his or her habitual residence."[14] *Tsai-Yi Yang*, 499 F.3d at 278.

In this case, where child has become well settled in the United States and has attained an age and maturity sufficient for her desire to remain in the United States to be taken into account, the court concludes that it is consistent with the Convention to allow child to remain in the United States with respondent. Accordingly, in an exercise of its discretion, the court denies the petition.

## IV. CONCLUSION

For the aforementioned reasons, the court concludes that both the "well-settled" and "wishes of the child" exceptions apply in this case and that it is appropriate to exercise its discretion in favor of allowing child to remain in the United States. Accordingly, petitioner's petition (D.I. 1) is denied.[15] An appropriate order shall issue.

---

[14]"[A] court must apply a stricter standard in considering a child's wishes when those wishes are the sole reason underlying a repatriation decision and not part of some broader analysis . . . ." *Tsai-Yi Yang*, 499 F.3d at 278 (internal quotation marks omitted). In this case, because child's wishes are not the sole basis for denying the petition, the court is not called on to apply a not-as-yet-clearly-defined "stricter standard."

[15]Because the court is not ordering child's return to Colombia, respondent is not responsible to pay petitioner's costs or attorneys fees incurred in connection with this petition. *See* 42 U.S.C. § 11607(3).

17